MARYLAND CASUALTY CO. v. CORLEY'S ESTATE.

(Division A. Feb. 8, 1932.)

[139 So. 390. No. 29504.]

Maynard, FitzGerald & Venable and John W. Crisler, all of Clarksdale, for appellant.

G. E. Williams, of Clarksdale, for appellee.

**Cook, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Coahoma county, Miss., disallowing the contested claim of the appellant, Maryland Casualty Company, against the estate of S. A. Corley, deceased, for an asserted balance of five thousand eight hundred sixty-one dollars and thirty-one cents, due it as of November 6, 1930. The facts upon which the claim is based appear in the record in the form of an agreed statement, and are substantially as follows:

The Commercial Bank of Clarksdale, Miss., was appointed as depository of the current funds of the county of Coahoma for the year 1922, and qualified as such depository by executing a bond in the sum of twenty thousand dollars, with the Maryland Casualty Company as surety, conditioned to save the county harmless from any loss by reason of any default or failure of the said bank to properly perform the trust reposed in it by such designation. Before executing such bond, the appellant, Maryland Casualty Company, required the execution of an indemnity agreement, and on January 7, 1922, the directors of the bank, including the said S. A. Corley, executed this indemnity agreement, reciting that at the special instance and request of the said directors and indemnitors, and upon the express condition that it (the indemnity agreement) be executed, the appellant, Maryland Casualty Company, had executed, or was about to execute, the said bond. Among other provisions of this indemnity agreement were the following:

"Third, that the surety or sureties executing said bond shall have the right, and such surety or sureties are hereby authorized, but not required: (a) to adjust,

settle or compromise any claim, demand, suit or judgment upon said bond, unless the Indemnitors shall request such surety or sureties to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with such surety or sureties satisfactory collateral, sufficient to pay any judgment or judgments, rendered or that may be rendered, with interest, costs, expenses and Attorneys' fees; (b) from time to time, to increase or decrease the penalty or penalties of said bond, to change the obligee or obligees therein, to execute or to consent to the execution of, any continuance, extensions, enlargements, modifications, changes, alterations or renewals of the obligation of suretyship assumed under said bond, and to execute any substitutes for said bond, with the same or different conditions, provisions and obligees, and with the same or larger or smaller penalties, it being hereby agreed that this instrument shall, in all its terms, apply accordingly; (c) to attach hereto, copy or copies of said bond, to fill up any blanks left herein, and to correct any errors in filling up any blanks herein, or in the description of said bond, or in said premium or premiums; it being hereby agreed that such copy or copies, when so attached, and that such insertions or corrections, when so made, shall be prima facie correct.''

''Tenth, that these covenants as also all collateral securities. or indemnity, if any, at any time deposited with or available to the Company, concerning any bond or undertaking executed for or at the instance of the Indemnitors or any of them, shall, at the option of the Company, be available on its behalf and for its benefit and relief, as well concerning any and all former or subsequent bonds or undertakings executed for or at the instance of the said Indemnitors or any of them as concerning the bond or undertaking for which such covenants, collateral securities or indemnity shall have been made, deposited or given; and, unless otherwise

specially agreed, said collateral, securities or indemnity may be disposed of by the Company, for the purposes aforesaid, either at public or private sale, in the discretion of the Company, in an amount sufficient to save it harmless as aforesaid, without notice to the Indemnitors or any of them; and the Company may, for its own account, and in its own behalf, purchase the whole or any part thereof.''

For the years 1923, 1924, and 1925 the said Commercial Bank was reappointed depository for the same funds as in 1922, while the Planter's National Bank was appointed as depository for the sheriff and tax collector's funds, and the appellant, Maryland Casualty Company, qualified as surety for the said Commercial Bank for each of said years by executing a certificate of renewal of the 1922 bond. In January, 1926, the board of supervisors of Coahoma county selected depositories for the year 1926, among others being the said Commercial Bank, which was appointed depository for the same funds as in the year 1922 to 1925, inclusive, and also for the sheriff's and tax collector's funds; and the bank qualified as such depository by executing a new bond in the penal sum of twenty thousand dollars with the appellant casualty company as surety, conditioned for the faithful performance of the trust reposed in it by said designations, and to save the obligee harmless from any loss from any default of the said bank. There was no default by the bank during the years 1922 to 1925, inclusive, but on the thirteenth day of December, 1926, while the bond executed by the appellant for that year was in full force and effect, the said Commercial Bank was closed for liquidation, and was liquidated by the state banking department. After the closure of said bank, the appellant paid to the county the amount of its liability on its bond, and, after receiving from the liquidating agent of said bank its proportionate part of the assets of the bank, there remained due it as of November

6, 1930, the sum of five thousand eight hundred sixty-one dollars and thirty-nine cents, for which amount it probated its claim against the estate of S. A. Corley, deceased, basing its claim on the indemnity agreement of 1922. The said S. A. Corley, who had died after the bank was closed for liquidation, was, at the time he signed the said indemnity agreement, and continuously thereafter until its closure, either an officer or director of said bank.

There appears to be but one question presented by this record for decision, and that is, Does the indemnity agreement of 1922 include an agreement to indemnify the appellee for liability on the 1926 bond? In deciding this question, it does not appear to us to be necessary to consider the question of whether or not the aforesaid renewal certificates executed by the said surety in 1923, 1924, and 1925 were, in view of section 758, Code 1930, effective to keep in force and effect for those years the bond executed in 1922. There were no defaults by the principal during any of these years, and the bond executed for 1926 does not purport to be a renewal of, or substitute for, the previous bond, which was originally executed in 1922, but it is an entirely new undertaking covering other, different, and increased obligations or liabilities.

The indemnity agreement, by section three thereof quoted above, confers upon the surety the right "from time to time, to increase or decrease the penalty or penalties of said bond, to change the obligee or obligees therein, to execute or consent to the execution of, any continuance, extensions, enlargements, modifications, changes, alterations or renewals of the obligation of suretyship assumed under said bond;" that is, of course, the bond of 1922. The agreement further granted to the surety the right to execute any substitute for the 1922 bond, "with the same or different conditions, provisions and obligees, and with the same or larger or smaller pen-

alties," in which case it was provided that the indemnity should, in all of its terms, apply.

The bond executed by the appellant in 1926 does not purport to be a continuance, extension, enlargement, modification, change, alteration, or removal of its 1922 bond. Neither is it in any sense a substitute for the 1922 bond or any renewal thereof, all of which had, by their terms, expired before the execution of the 1926 bond. The 1926 bond was executed to enable the bank to qualify for a new term as a depository for the same class of funds as those covered by the appointment for the previous years, and also as depository for other and entirely different funds. For the years 1922 to 1926, inclusive, the Commercial Bank was appointed depository for the current funds of the county, under and by virtue of chapter 194, Laws of 1912; while in 1926, under the provisions of chapter 315, Laws of 1920, it was also appointed as a depository for the funds collected by the sheriff and tax collector. The appellant executed one bond to enable the bank to qualify under both designations, and we do not think any of the provisions of section three of the indemnity agreement can be construed to include an agreement to indemnify for liability on the new bond executed in 1926.

The only other provision of the indemnity agreement upon which a claim of liability of the indemnitors for any defaults occurring during the period covered by the 1926 bond could be based are found in section ten thereof, quoted herein, which provides that the agreement "shall, at the option of the company, be available on its behalf and for its benefit and relief, as well concerning any and all former or subsequent bonds or undertakings executed for or at the instance of the said indemnitors, or any of them as concerning the bond or undertaking for which such covenants, . . . shall have been made, deposited or given," etc. In order for this provision to be effective to create liability of the said

indemnitors on account of the execution of the "subsequent" or 1926 bond, it must be determined that the 1926 bond was executed "for or at the instance of the said indemnitors." While it is true that the bank acted by or through its officers, still the 1922 bond, as well as all subsequent bonds, was executed by the appellee "for and at the instance of" the bank. The signers of the indemnity agreement assumed liability thereunder as individuals and not as directors of the bank, and the extent of their liability was not affected by the fact that they happened to be directors of the institution for whose benefit the bond was executed. We therefore conclude that no liability or obligation to save the appellant harmless from defaults of the principal in the 1926 bond arose under or by virtue of the provisions of section 10 of the 1922 agreement.

The decree of the court below will therefore be affirmed.

Affirmed.